IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| In re:<br><br>South Carolina Department of Parks, Recreation, and Tourism,<br><br>*Movant.* | CA No. 3:23-cv-2100-JFA |
| In re: C/A No. 1:21-md-03010 (PKC)<br><br>In re Google Digital Advertising Antitrust Litigation | **ORDER** |
| In re: C/A No. 1:21-cv-06841 (PKC)<br><br>State of Texas, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>Google, LLC,<br><br>*Defendant.* | |

This matter is before the Court on the South Carolina Department of Parks, Recreation and Tourism ("SCPRT")'s Motion to Quash a subpoena issued by Google, LLC ("Google") on January 27, 2023. (ECF No. 1). This motion has been fully briefed, and therefore, is ripe for this Court's review.

1

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a lawsuit pending in the Eastern District of Texas in which seventeen states including South Carolina (the "states") have sued Google alleging it engaged in anticompetitive behavior. (SDNY Dkt. No. 1).[1] The plaintiff states' allegations are that "Google has monopolized or attempted to monopolize various markets related to online display ads [ ] and unlawfully used its market power to tie the sale of Google's 'ad server,' a tool used by publishers to manage their inventory of display ads, to Google's 'ad exchange' a distinct product that conducts auctions for sale of display adds. [ ]. (ECF No. 1 at 2-3). They also allege that Google entered into an unlawful restraint of trade with non-parties Facebook, Inc. and Facebook Ireland Limited ("Facebook") [ ]." *Id.* Specifically, the plaintiff states assert violations of 15 U.S.C. §§ 1 and 2 (the Sherman Act) and seek injunctive relief pursuant to 15 U.S.C. § 26 (the Clayton Act). (ECF No. 1 at 2). The remainder of the plaintiff states' claims are violations of state antitrust and unfair competition laws which have been stayed. *Id.*

This case was initiated in Eastern District of Texas but on August 31, 2021, the case was consolidated by the Judicial Panel on Multi-District Litigation ("JPML") for pre-trial proceedings in the Southern District of New York. (ECF No. 10 at 9). However, recently, the JPML ordered a remand of this suit back to the Eastern District of Texas. (ECF No. 19). Although Google has indicated its intent to appeal this decision, it is important to note that the underlying lawsuit is currently pending in the Eastern District of Texas. *Id.*

---

[1] "SDNY Dkt." Refers to the CM/ECF docket for Texas v. Google, No. 1:21-cv-06841 in the Southern District of New York.

Importantly, this matter is before this Court because Google served a third-party subpoena on SCPRT pursuant to Federal Rule of Civil Procedure 45 seeking the department's online advertising records. Subsequently, SCPRT filed the instant motion to quash. (ECF No. 1).

## II.   LEGAL STANDARD

Rule 45 also permits the subpoenaed nonparty to quash or modify a subpoena where it, inter alia, "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). The scope of discovery under a subpoena is the same as the scope of discovery under Federal Rule of Civil Procedure 26(b). *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012). When discovery is sought from nonparties, however, its scope must be limited even further. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). As the Fourth Circuit explained in *Jordan*, "nonparties are 'strangers' to the litigation, and since they have 'no dog in [the] fight,' they have 'a different set of expectations' from the parties themselves. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.*

A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iv). As under Rule 26, the ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient. *In re Modern Plastics Corp.*, 890

3

F.3d 244, 251 (6th Cir. 2018); *Citizens Union of N.Y.C. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). But courts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally. *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005).

### III.  DISCUSSION

SCPRT, a non-party to the underlying lawsuit involving South Carolina and Google, seeks an order protecting it from a subpoena for documents and information issued by Google based on Eleventh Amendment immunity.[2] Thus, the issue before this Court is whether state sovereign immunity shields a non-party state entity, SCPRT, from having to respond to a lawfully issued Rule 45 subpoena. If so, this Court must consider whether such immunity has been waived by South Carolina's involvement in the underlying lawsuit against Google.

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court "has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans–*

---

[2] Although the terms are sometimes used interchangeably, there is a difference between the states' Eleventh Amendment immunity from suit in federal court, and the general doctrine of sovereign immunity of the states from suit in any court. See generally, *Stewart v. North Carolina*, 393 F.3d 484, 487-88 (4th Cir. 2004) (discussing generally the distinction between state sovereign immunity and Eleventh Amendment immunity); *Alden v. Maine*, 527 U.S. 706, 713 (1999) (same).

*Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868 (1990) (internal quotation marks omitted). The States' immunity also extends to "state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900 (1997); see *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (state sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, often referred to as an "arm of the state.").

As an undisputed state agency, SCPRT would ordinarily be immune from "suit" in federal court. However, the issue before this Court is not so simple. The Fourth Circuit has not had the opportunity to interpret the Constitution to hold whether a subpoena can be considered a "suit" for the purposes of Eleventh Amendment immunity. *See Port Auth. Trans–Hudson Corp.,* 495 U.S. at 304 (1990) (states immune from *suits* brought in federal court); *See Va. Dept. of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (bypassing the question of whether "a subpoena issued against a nonparty state agency…runs afoul of state's sovereign immunity…"). Although the parties supply this Court with ample case law from other district courts and Courts of Appeals supporting their respective positions, the cited authority is not binding and more significantly, it evidences a split amongst federal courts on the answer to this question.[3]

---

[3] *See Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) ("[A]n order commanding a state official who is not a party to a case between private persons to produce documents in the state's possession during the discovery phase of the case" does not violate the Eleventh Amendment "because [it does] not compromise state sovereignty to a significant degree"); *In re Missouri Dep't of Nat. Res.,* 105 F.3d 434, 436 (8th Cir. 1997) ("There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court."); *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 30 n.8 (D.D.C.2014) (Eleventh Amendment would "not completely shield [the University of Massachusetts] from certain non-party discovery requests" if it were not joined as a party); *Arista Records LLC v. Does 1–14*, No. 7:08-CV-00205, 2008 WL 5350246, at *1–3 (W.D. Va. Dec. 22, 2008) (nonparty state university's

Nonetheless, this Court finds an answer to this question to be unnecessary for resolving the motion pending before this Court. Assuming without deciding that SCPRT is entitled to Eleventh Amendment immunity, this Court finds such immunity would have been waived by South Carolina's voluntary involvement in the underlying action pending in the Eastern District of Texas. It is well established that a state may waive its sovereign immunity by voluntarily litigating a case in federal court. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002); "Waiver by litigation ... 'involve[s] actions in which the state acted as an affirmative participant rather than as a beleaguered defendant.' " *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F.Supp.2d 542, 553 (D. Md. 2008)(quoting *Unix Sys. Labs., Inc. v. Berkeley Software Design, Inc.*, 832 F.Supp. 790, 801-02 (D.N.J. 1993)). SCPRT attempts to put forth an argument that it is separate from South Carolina when it comes to the underlying lawsuit. SCPRT outlines the organization of the government in South Carolina and explains that as an agency it is controlled by the Governor whereas this lawsuit was initiated by the Attorney General. As two separately

---

motion to quash subpoenas was denied on the grounds that the doctrine of sovereign immunity did not apply to third-party subpoena requests); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634–35 (D. Nev. 1986) (affirming magistrate's denial of nonparty state agency's motion to dismiss discovery subpoena and notice of deposition; rejecting agency's argument for Eleventh Amendment immunity); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1079 (E.D. Cal. 2008) (subpoena not a "suit" under the Eleventh Amendment); *United States v. Univ. of Mass., Worcester*, 167 F. Supp. 3d 221, 224 (D. Mass. 2016) (distinguishing federal and tribal immunity and concluding that state college not immune from Rule 45 subpoena under the Eleventh Amendment); *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d at 248 ("After considering the doctrines of state and federal sovereign immunity and the principles that undergird each, the court agrees with plaintiffs and holds that the doctrine of state sovereign immunity does not preclude a court from enforcing the subpoena against the Ports Authority or any of its employees."); Cf. *Russell v. Jones*, 49 F.4th 507, 515-16 (5th Cir. 2022) (holding states are immune from subpoenas issued by private parties in federal court); *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) (holding the federal government is immune from subpoenas in state court proceedings).

elected officials with different duties and responsibilities, SCPRT asserts that the Attorney General's actions cannot be imputed onto SCPRT to constitute a waiver of immunity. However, SCPRT cannot have its cake and eat it too.

The Supreme Court has established that sovereign immunity belongs solely to the state, and from there, it flows to state entities and state officials. Indeed, the Eleventh Amendment makes no mention of the states' agencies, entities, departments, or officials. But, over time, Courts have interpreted the Eleventh Amendment to extend to the states' agencies because they are indistinguishable from the state, itself. Of course, SCPRT does not dispute it is a state agency that would be entitled to Eleventh Amendment immunity under normal circumstances, but it argues the state's waiver of such immunity does not function the same way. This Court is unpersuaded. Google's argument for waiver is a strong one as it explains that SCPRT's immunity is derivative in nature. It only exists due to the immunity afforded to South Carolina and its relationship to South Carolina as a state agency. Thus, it makes little senses to find a state's immunity can be imputed to its agencies but not its waiver of such immunity.

Further, on a practical note, Google initially requested the subject documents and information from South Carolina through discovery. In response, South Carolina along with the other states provided that "Federal Rule 45 subpoenas….are the proper channels for Google to seek documents that are in the possession, custody, or control of those agencies." (ECF No. 10-1 at 2-3). Accordingly, it would be fundamentally unfair to punish Google for simply following South Carolina's instruction to subpoena the requested

documents because South Carolina allegedly lacks custody, control, and possession over documents within SCPRT.

Therefore, this Court denies SCPRT's motion to quash finding it would have waived any immunity to be afforded to it by the Eleventh Amendment in two different instances. First, it would have waived such immunity when South Carolina voluntarily initiated suit against Google, and second, it would have waived such immunity when South Carolina instructed Google to issue a subpoena to its agency, SCPRT, for the documents it was seeking through discovery. Importantly, SCPRT does not raise any other arguments as to why this Motion should be quashed such as whether it seeks privileged or other protected matter or whether it places an undue burden on SCPRT. Thus, these arguments are not before this Court for consideration.

## IV.     CONCLUSION

Therefore, this Court denies SCPRT's Motion to Quash. (ECF No. 1). SCPRT shall respond to the subpoena according to its terms for production. See (ECF No. 1 at 2).

IT IS SO ORDERED.

July 12, 2023                                                          Joseph F. Anderson, Jr.
Columbia, South Carolina                                   United States District Judge